1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA
10
CECIL DUDGEON,
No. C09-5299 FDB/KLS
11
Petitioner,
12
v.
**REPORT AND RECOMMENDATION**
**Noted for:  January 22, 2010**
13
HENRY RICHARDS,
14
Respondents.
15
16      Petitioner Cecil Dudgeon seeks federal habeas corpus relief pursuant to 28 U.S.C. §
17  2254.  This case has been referred to United States Magistrate Judge Karen L. Strombom
18  pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.  Mr. Dudgeon seeks to
19  challenge his commitment order under RCW 71.09 and the underlying conviction of the
20  predicate offense.  Dkt. 3.  Respondent filed an Answer and submitted relevant portions of the
21  State court record.  Dkts. 11 and 12.  Petitioner filed a reply.  Dkt. 19.[1]
22
23
24
25
_____
[1] Petitioner complains that he did not have sufficient time within which to file his reply.  However, on October 26,
26  2009, the court granted him an extension of time until December 4, 2009.  Dkt. 18.  (*See* Plaintiff's motion for
extension filed on October 15, 2009, noted for October 30, 2009. (Dkt. 13)).

REPORT AND RECOMMENDATION - 1

Mr. Dudgeon presents six grounds for habeas relief. Upon review, it is the Court's recommendation that Mr. Dudgeon's petition should be dismissed with prejudice as two of his claims are time barred, three are unexhausted and procedurally barred and one is without merit.

## I. STATEMENT OF PROCEDURAL HISTORY

Mr. Dudgeon was found guilty by jury verdict on July 24, 2001 of one count of indecent liberties with forcible compulsion. Dkt. 12, Exh. 1. On October 22, 2001, Mr. Dudgeon was sentenced in the Jefferson County Superior Court to 68 months confinement in the Washington Department of Corrections, plus an additional 36 months of community placement. *Id.*, at 6. On May 3, 2007, based upon the finding of a jury that Mr. Dudgeon was a sexually violent predator under RCW 71.09.060, the Kitsap County Superior Court entered an order of commitment. *Id.*, Exh. 2.

On October 22, 2001, counsel for Mr. Dudgeon filed a notice of appeal of the Jefferson County Superior Court judgment and sentence. Dkt. 12, Exh. 3. Counsel for Mr. Dudgeon then filed a brief of appellant in the Washington Court of Appeals, raising the following issues:

> Should the related charge of indecent liberties have been dismissed in the second case[2] because the State charged and tried Mr. Dudgeon with rape and indecent liberties in the second case when the first trial was on the rape only, and where the State was aware of sufficient facts to try both charges in the first case, thereby violating the mandatory joinder rules of Criminal Rule 4.3A? Did Mr. Dudgeon's counsel provide ineffective assistance by failing to move to dismiss the indecent liberties charge under CrR 4.3A for the State's failure to comply with the mandatory joinder rules?

---

[2] The State charged Mr. Dudgeon with third degree rape and indecent liberties with forcible compulsion on May 21, 1999. Mr. Dudgeon moved to dismiss the indecent liberties charge prior to trial. The State did not oppose the motion, and the court granted it without prejudice. The State then tried Mr. Dudgeon on the remaining rape charge. After the State rested, Mr. Dudgeon moved to dismiss the case because the charging information failed to include an essential element of the crime charged. The court agreed and dismissed the case without prejudice. The State refiled both the third degree rape and indecent liberties charges. Before his second trial, Mr. Dudgeon moved to dismiss claiming that the State violated his double jeopardy right and improperly delayed filing the charges. The trial court denied both motions. The jury convicted Mr. Dudgeon of indecent liberties, but it did not reach a verdict on the rape charge. Dkt. 12, Exh. 7, p. 2.

REPORT AND RECOMMENDATION - 2

Did the State violate Mr. Dudgeon's speedy trial rights by failing to bring him to trial within 90 days of his first arraignment on the indecent liberties charge? (Assignment of Error No. 4)

Did Mr. Dudgeon's trial counsel provide ineffective assistance by failing to present evidence of Mr. Dudgeon's burn injuries when the forcible compulsion element of indecent liberties was supported by evidence of the alleged victim struggling with Mr. Dudgeon?

Did the trial courts violate Mr. Dudgeon's right to be free from double jeopardy when they granted and upheld dismissal of the first prosecution under the incorrect standard? (Assignment of Error No. 7)

Dkt. 12, Exh. 4, pp. 3-6.

Counsel for Mr. Dudgeon filed a reply brief. *Id.*, Exh. 6. On January 10, 2003, the Washington Court of Appeals issued an unpublished opinion, in which it affirmed Mr. Dudgeon's Superior Court judgment and sentence. *Id.*, Exh. 7. Mr. Dudgeon did not appeal the January 2003 Court of Appeals' decision to the Washington Supreme Court, and the Court of Appeals issued a mandate on March 5, 2003. *Id.*, Exh. 8.

On May 3, 2007, following the entry of the Kitsap County Superior Court's Order of Commitment of Mr. Dudgeon as a sexually violent predator under RCW 71.09, counsel for Mr. Dudgeon filed a notice of appeal of the Order of Commitment. *Id.*, Exh. 9. Counsel for Mr. Dudgeon filed a brief of appellant in his case in the Washington Court of Appeals. *Id.*, Exh. 10. Mr. Dudgeon raised the following issues:

1) Appellant was held in custody beyond his earned early release date due to the application of a DOC policy precluding final decision on a release plan submitted by an offender being considered for commitment under RCW 71.09. The state subsequently filed a commitment petition. Where, at the time the petition was filed, appellant was not in custody for a sexually violent offense or an overt act, but instead was incarcerated in violation of due process, should the state be required to plead and prove a recent overt act in order to commit appellant?

REPORT AND RECOMMENDATION - 3

2)      The state's expert was permitted to testify that she diagnosed appellant
        with pedophilia, based solely on allegations by the state's witnesses.
        There was no physical or corroborative evidence to support the
        allegations, and appellant denied them. Where the expert's opinion was
        dependent on her perception of the other witnesses' truthfulness, did
        admission of that opinion usurp the exclusive function of the jury to weigh
        the evidence and determine credibility?

3)      Where the evidence was insufficient to prove appellant is currently
        dangerous or likely to commit predatory acts, and where there is no
        scientific basis for the expert's opinion regarding likelihood of reoffense,
        is reversal required?

*Id.*, Exh. 10, pp. 1-2. Respondent State of Washington filed an opening brief. *Id.*, Exh. 11.

Counsel for Mr. Dudgeon filed a reply brief. *Id.*, Exh. 12. On July 29, 2008, the Washington

Court of Appeals issued an opinion published in part in Mr. Dudgeon's case in which it affirmed

the jury's finding that he was a sexually violent predator. *Id.*, Exh. 13.

Counsel for Mr. Dudgeon filed a motion for discretionary review in the Washington

Supreme Court, raising the following issues for discretionary review:

1)      C.D. was held in custody beyond his earned early release date due to the
        application of a DOC policy precluding final decision on a release plan
        submitted by an offender being considered for commitment under RCW
        71.09. The state subsequently filed a commitment petition. Where, at the
        time the petition was filed, C.D. was not in custody for a sexually violent
        offense or an overt act, but instead was incarcerated in violation of due
        process, should the state be required to plead and prove a recent overt act
        in order to commit appellant?

2)      The state's expert was permitted to testify that she diagnosed C.D. with
        pedophilia, based solely on allegations by the state's witnesses. There was
        no physical or corroborative evidence to support the allegations, and C.D.
        denied them. Where the expert's opinion was dependent on her perception
        of the other witnesses' truthfulness, did admission of that opinion usurp
        the exclusive function of the jury to weigh the evidence and determine
        credibility?

3)      Where the evidence was insufficient to prove C.D. is currently dangerous
        or likely to commit predatory acts, and where there is no scientific basis

REPORT AND RECOMMENDATION - 4

for the expert's opinion regarding likelihood of reoffense, is reversal required?

*Id.*, Exh. 14, pp. 1-2.

On March 3, 2009, the Chief Justice for the Washington Supreme Court entered an order denying Mr. Dudgeon's petition for review. *Id.*, Exh. 16. On March 11, 2009, the Washington Court of Appeals entered a mandate. *Id.*, Exh. 17.

On January 22, 2008, Mr. Dudgeon filed a personal restraint petition in the Washington Supreme Court, raising the following issues for review:

1) Whether Petitioner can be deprived of his freedom due to negligent and/or deliberate behavior by State official acting under "color of law" that rises to the level of Constitutional significance in violation of State and Federal Privacy Acts?

2) Whether the deliberate suppression and/or omission of critical exculpatory, documentary and conclusive evidence of Petitioner's innocence of the charge of "forcible compulsion" in his predicate conviction constituted a breach of his Constitutional right to a fair and impartial trial – giving rise to Petitioner's present civil confinement?

3) Whether Petitioner's Due Process and Equal Protection rights, immunities, protections and guarantees under the Fourteenth Amendment, through the Fifth Amendment, have been violated?

4) Whether Petitioner has a right, at age 74 plus, to unconditional release or, at a minimum, a full evidentiary hearing/new trial, based on the majority decision reached by the Washington State Supreme court, in the "*In re Detention of Keith W. Elmore*" case, docket No. 79208-9, Filed October 18, 2007, holding, inter alia, that age alone can be the cause of "so changing" within the meaning of RCW 71.09 et seq., sufficient to merit release or a new trial?

5) Whether Petitioner was unlawfully held past his statutory and promised earned early prison release date, in order for the State End Sentence Review Committee, ESRC, to file the RCW 71.09 SVP petition against him?

6) Whether, when the State has offered Petitioner Twenty-Three hundred dollars [$2,300.00] as compensation for damages resulting from Petitioner

REPORT AND RECOMMENDATION - 5

being held beyond Petitioner's earned early release date, EERD, said offer is tacit admission Petitioner's then confinement beyond the EERD was unlawful, thereby nullifying the filing of the SVP petition against Petitioner?

7) Whether Petitioner is entitled to relief when State employees and/or contracted persons, as detailed herein, have violated clearly established statutory or constitutional rights of which a reasonable person would have known?

*Id.*, Exh. 18, at i. On March 31, 2008, Respondent State of Washington filed a response to Mr. Dudgeon's personal restraint petition. *Id.*, Exh. 19. Mr. Dudgeon filed a reply. *Id.*, Exh. 20. On April 28, 2008, the Washington Supreme Court Commissioner transferred Mr. Dudgeon's personal restraint petition to the Washington Court of Appeals, Division II. *Id.*, Exh. 21 (Washington Court of Appeals Cause No. 37744-6-II). On September 25, 2008, the Acting Chief Judge of the Washington Court of Appeals issued an order dismissing Mr. Dudgeon's personal restraint petition. *Id.*, Exh. 22. Mr. Dudgeon did not appeal the Washington Court of Appeals' order dismissing his petition to the Washington Supreme Court and the Washington Court of Appeals issued a certificate of finality on November 21, 2008. *Id.*, Exh. 23.[3]

## II. PROCEDURAL FACTS RELATING TO CIVIL COMMITMENT TRIAL

The following procedural facts leading up to and including Mr. Dudgeon's civil commitment trial are taken from the Washington Court of Appeals decision affirming the jury's finding that he was a sexually violent predator:

I. PROCEDURAL FACTS LEADING UP TO CIVIL COMMITMENT TRIAL

In 2001, Dudgeon was convicted of indecent liberties by forcible compulsion and sentence to 68 months' confinement. The Department of

---

[3] Mr. Dudgeon also filed a personal restraint petition seeking to terminate his community corrections time and he filed a separate habeas petition in this court relating to that conviction and appeal. See *Dudgeon v. Richards,* Case No. 09-5229FDB/KLS. That petition was denied on September 22, 2009 on the grounds that the federal statute of limitations had expired. (See Dkt. 16 therein).

Corrections (DOC) assigned Dudgeon an earned early release date of May 23, 2005. Per DOC policy, sex offenders can only be released after DOC has investigated and approved a release plan, indicating where the offender will live. Dudgeon submitted his release plan on March 10, 2005.

Before Dudgeon submitted his release plan, on February 15, 2005, the End of Sentence Review Committee (ESRC) referred Dudgeon to the ESRC SVP Subcommittee for civil commitment consideration under chapter 71.09 RCW. On March 31, 2005, the ESRC SVP subcommittee determined that a Forensic Psychological Evaluation (FPE) should be requested to determine if Dudgeon met criteria as a SVP.

Meanwhile, a community custody officer (CCO) investigated Dudgeon's release plan. The CCO was required, in addition to other tasks, to visit the proposed residence, assess the degree of risk for victims and potential victims of similar age or circumstance, and visit the neighborhood around the proposed residence to determine if schools or daycare centers are present. DOC Policy 350.200. On April 12, 2005, the investigating CCO approved Dudgeon's release plan.

Dudgeon's approval came to the attention of Kimberly Acker, the DOC ESRC/SVP Civil Commitment Program Manager, on April 15, 2005. Acker determined that approval of Dudgeon's plan was inappropriate and premature for two reasons First, approval of Dudgeon's plan was inappropriate under the "Dutcher Directive" amending DOC Policy 350.200. [fn 1: DOC created the "Dutcher Directive" in response to *In re Personal Restraint of Dutcher,* 114 Wn. App. 755, 60 P.3d 635 (2002).] At that time, DOC interpreted the Dutcher Directive to require that a proposed release plan for a sex offender under consideration for civil commitment as a SVP could be neither approved or denied until the assigned CCO (1) reviewed the ESRC file materials, including all psychology, psychiatric, and forensic psychological reports, and (2) requested and reviewed the completed FPE report recommended by the ESRC. When the investigating CCO initially approved Dudgeon's plan on April 12, 2005, Dudgeon was also under consideration for SVP civil commitment procedures, and his FPE, requested by the ESRC, had not been completed by a doctor or reviewed by the CCO.

Second, Acker noticed that the CCO's investigation suffered from other shortcomings. DOC Policy 350.200 requires the investigating CCO to enter all actions taken during an investigation into a central database, so that a written "chronological record" is created. 3 Report of Proceedings (RP) at 78. Acker noted that the investigating CCO entered "no chronological record [ ] at all" of his investigation into Dudgeon's release plan. 3 RP at 84-85. [fn 2: Acker testified: There was no indication that any visit had been made, that any contact had been made with the proposed sponsor, that any victim or potential victim risk

REPORT AND RECOMMENDATION - 7

assessment had been conducted, that they had even gone to the residence or area surrounding the residence to look and assess proximity to schools, daycares, as required by law, or even location of nearby victims. There was no indication that any of that had been completed. 3RP at 85.]

Based on these two factors, Acker formally withdrew approval of Dudgeon's release plan. Acker resubmitted the release plan the same day to allow the CCO to request and review appropriate file materials and to fully consider the release plan in light of the risk Dudgeon posed to the community. DOC assigned a new investigating CCO to review Dudgeon's plan.

On May 16, 2005, Division One of this court, announced its decision in *In re Personal Restraint of Liptrap,* 127 Wn. App. 463, 111 P.3d 1227 (2005)). In *Liptrap,* the court held that the DOC's Dutcher Directive created an "unauthorized exemption from [DOC's] obligation to timely review proposed [release] plans on their merits." *Liptrap*, 127 Wn. App. at 473. The *Liptrap* court held that "delay in deciding whether a particular inmate qualifies for a civil commitment referral does not justify delay in consideration of the inmate's release plan if he has become eligible for transfer into community custody." *Liptrap,* 127 Wn. App. at 474. The court found that DOC "must act on proposed release plans in a timely manner, so as to ensure the inmate has a genuine opportunity to benefit from the earned early release credits." *Liptrap*, 127 Wn. App. at 476.

After the court's *Liptrap* decision, DOC prepared a list of offenders, including Dudgeon, affected by the decision. DOC reviewed the progress of these offender's release plans to ensure that their "[plans were] proceeding" and that the investigating CCOs "followed through and completed their investigation[s]." 3 RP at 87.

The investigating CCO continued to investigate Dudgeon's release plan. [fn 3: DOC records indicate, and Dudgeon concedes, that on May 23, 2005, during the investigation of Dudgeon's release plan, he informed Correctional Counselor Cindy Tully that he did not want to be released from the institution as a Level III sex offender and that he wanted to know if he could cancel investigation of his release plan until he could get the level "removed." Clerk's Papers (CP) at 223. On May 31, 2005, Acker spoke with Dudgeon's lawyer. She informed him that Dudgeon stated that he was interested in removing his release plan from consideration so that he could appeal his conviction and/or established Risk Level Certification. Acker told Dudgeon's attorney that investigation of his plan was continuing as planned, despite Dudgeon's comments.] On May 20, 2005, Acker assigned Dr. Amy Phenix, a forensic psychologist, to prepare Dudgeon's FPE. Dudgeon's CCO did not wait for Dr. Phenix to complete her evaluation before recommending approval of Dudgeon's release plan. DOC approved Dudgeon's release plan on June 1, 2005, roughly 12 days after Division One's decision in *Liptrap*.

On June 2, 2005, DOC began notifying local law enforcement of Dudgeon's pending release. Per RCW 9.94A.612, DOC must notify law enforcement and the offender's victims of his release no less than 30 days before the release. DOC policy 350.600 (Teletype Notification Policy) extends this window so that notice must be given no less than 35 days from the offender's release date. Dudgeon was set to be released on July 7, 2005, 35 days from when DOC notified law enforcement.

Dr. Phenix completed Dudgeon's FPE and forwarded it to the ERSC on June 24, 2005. Dr. Phenix determined that Dudgeon met the SVP criteria. Acker notified the Washington State Attorney General's Office of Dr. Phenix's evaluation, and the State initiated SVP civil commitment proceedings on July 6, 2005. Dudgeon was not released on July 7, 2005, due to the pending civil proceedings.

II. SVP CIVIL COMMITMENT TRIAL

After the court found probable cause to believe that Dudgeon was a SVP, and after several continuances, the SVP court scheduled Dudgeon's commitment trial for February 26, 2006. During pretrial, Dudgeon filed a motion to require the State to prove a recent, overt act. Since the State filed the SVP petition while Dudgeon was in custody, it argued it was not required to plead or prove a "recent overt act." RCW 71.09.030(5). Dudgeon argued that because his detention past his original early release date was unlawful, and but for the unlawful detention he would have been released to the community, that the State should be required to prove a recent overt act, as though he had been released to the community. The SVP court found Dudgeon's detention lawful, and it allowed the state to proceed without proving a recent overt act. [fn 4: The SVP court entered written findings of fact and conclusions of law. Dudgeon does not specifically assign error to these findings and conclusions; instead he assigns error to the SVP court's decision to permit the State to proceed without pleading and proving a recent overt act.] Dudgeon sought discretionary review from this court, which we denied on April 12, 2007.

At the SVP proceeding, the State presented testimony from six of Dudgeon's alleged victims, parents of two victims, Dr. Phenix, and Dudgeon. Dudgeon presented evidence from two of his biological daughters and a former DOC employee who explained Dudgeon's conditions of probation should the jury find he is not a SVP. On May 3, 2007, the jury found Dudgeon to be a SVP, and the court committed him to the McNeil Island Special Commitment Center. Dudgeon is still in confinement. He appeals.

Dkt. 12, Exh. 13, pp. 1-6.

REPORT AND RECOMMENDATION - 9

# III. ISSUES PRESENTED

Mr. Dudgeon filed this habeas corpus petition on May 11, 2009. Dkt. 1. He presents the following issues for review:

1)   Should C.D.'s conviction of the predicate offense be set aside if it can be shown that the prosecution withheld critical exculpatory evidence which, if introduced, would in all likelihood, have dramatically altered the outcome of the original trial?

2)   Should C.D.'s conviction of the predicate offense be set aside if it can be shown that the prosecution knew the testimony of its primary witness was perjury and let the trial proceed without correcting it?

3)   Should C.D.'s commitment order under RCW 71.09 be vacated if it can be shown the decision to initiate commitment proceedings was based on false and greatly distorted information?

4)   Should C.D.'s commitment order under RCW 71.09 be vacated if it can be shown he was unlawfully imprisoned beyond his EERD due to deliberate and grossly negligent acts by DOC officials in order to effect the RCW 71.09 petition while C.D. was incarcerated, which triggers the need for the state to prove a new Recent Overt Act?

5)   Should C.D.'s commitment order under RCW 71.09 be vacated if it can be shown the trial court permitted the commitment trial to proceed even thought C.D. did not meet the commitment criteria?

6)   Should C.D.'s commitment order under RCW 71.09 be vacated if it can be shown the trial court permitted the state's expert to testify based solely on her opinion unsupported by any scientific data?

Dkt. 3, p. 3 (CM/ECF pagination).

# IV. EVIDENTIARY HEARING

The decision to hold a hearing is committed to the court's discretion. *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002). The petitioner bears the burden of showing the need for a hearing. *Harris v. Pulley*, 692 F.2d 1189, 1197 (9th Cir. 1982), rev'd on other grounds, 465 U.S. 37 (1984); *Baja v. Ducharme*, 187 F.3d 1075 (9th.Cir. 1999). A hearing is

REPORT AND RECOMMENDATION - 10

not required if the claim presents a purely legal question, or if the claim may be resolved by reference to the state court record. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir.) (en banc), cert. denied, 114 S. Ct. 2125 (1994).

The court finds that an evidentiary hearing is not required on any of Mr. Dugeon's habeas claims. Questions regarding whether Mr. Dudgeon has properly exhausted three of his claims and whether two of his claims are time-barred under the federal statute of limitations may be resolved by reference to the record before this court. Similarly, the question of law raised in the sole exhausted claim does not require a hearing because the record in this case precludes habeas relief.

## V.  STANDARD OF REVIEW

This court's review of the merits of Mr. Dudgeon's claims is governed by 28 U.S.C. § 2254(d)(1).  Under that standard, the court cannot grant a writ of habeas corpus unless a petitioner demonstrates that he is in custody in violation of federal law and that the highest state court decision rejecting his ground was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(c) and (d)(1).  The Supreme Court holdings at the time of the state court decision will provide the "definitive source of clearly established federal law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), overruled in part on other grounds by *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

The court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; see also *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). In addition, for federal habeas corpus relief to be granted, the constitutional error must have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## VI. DISCUSSION

### A. Exhaustion of State Remedies

Respondent contends that Mr. Dudgeon failed to fully and fairly exhaust his third, fourth and sixth habeas claims. Dkt. 11, p. 7. Each of these claims is addressed below.

Section 2254(b)(1) provides that a habeas petition must be denied if the petitioner failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order to exhaust state remedies, the petitioner must "fairly present" his federal claims to the state courts thereby giving the state the opportunity to address and correct alleged violations of the petitioner's federal rights. *Duncan*, 513 U.S. at 365; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Voerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

A complete round of the state's established review process includes presentation of a petitioner's claim to the state's highest court. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert.

denied 513 U.S. 935 (1994). However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004), cert. denied 545 U.S. 1146 (2005). But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available").

"To 'fairly present' his federal claim to the state courts, [petitioner] had to alert the state courts to the fact that he was asserting a claim under the United States Constitution." *Hiivala*, 195 F.3d at 1106 (citing *Duncan*, 513 U.S. at 365-66). The Supreme Court stated in *Gray v. J.D. Netherland* that to "fairly present" a claim to the state court, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of a claim." Rather, the petitioner "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." 518 U.S. 152, 162-63 (1996).

If a petitioner fails to obey state procedural rules, the state court may decline review of a claim based on that procedural default. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). If the state court clearly and expressly states that its judgment rests on a state procedural bar, the petitioner is barred from asserting the same claim in a habeas proceeding. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993); *Shumway v. Payne*, 223 F.3d 982 (9th Cir. 2000). A claim is also barred, despite the absence of a "plain statement,"

where the petitioner failed to exhaust state remedies, and the state courts would now find the claim to be procedurally barred under state law. *Coleman*, 501 U.S. at 735 n. 1; *Noltie*, 9 F.3d at 805. Washington law bars a defendant from filing a petition more than one year after the judgment becomes final. RCW 10.73.090. State law also bars the filing of more than one collateral challenge to a judgment and sentence. RCW 10.73.140; RAP 16.4(d).

### 1. Third Claim – Decision to Initiate Civil Commitment Proceedings Based on False and Distorted Information

In his third claim for federal habeas relief, Mr. Dudgeon maintains that his civil commitment under RCW 71.09 should be vacated because the decision to initiate civil commitment proceedings was based on DOC employee Kim Acker's improper scoring of Mr. Dudgeon's Sex Offender Risk Level Classification (WA SORL). Mr. Dudgeon argues that the scoring was based on false and greatly distorted information, leading to a skewed score that was unjustifiably higher than the true facts supported. Dkt. 3, pp. 13-17. Mr. Dudgeon alleges, *inter alia*, that Ms. Acker included additional points based on unfounded allegations; misrepresented his alcohol use; misrepresented his release environment and improperly added two points in this category; was untruthful about his willingness to engage in sex offender treatment; incorrectly indicated that the offenses were predatory in nature and/or offender used a position of trust; and, inflated his risk of re-offending. *Id.*

In his brief to the Washington Court of Appeals, Mr. Dudgeon stated that Ms. Acker revoked the approval of his release plan because the approval violated DOC's policy against making a final decision on any release plan submitted by an offender being considered for civil commitment until a forensic psychological evaluation had been reviewed. Dkt. 10, p. 21. Mr.

Dudgeon claims that this revocation was part of the delay resulting in depriving him of his earned early release. *Id.*, p. 26.

Mr. Dudgeon raised the same claim in his Brief for discretionary review to the Washington Supreme Court. Dkt. 12, Exh. 14, pp. 4-5, 9. And again in his habeas corpus petition before the Washington Supreme Court, Mr. Dudgeon complained that he was unlawfully held beyond his earned early release date because Ms. Acker decided to hold him pending completion of the psychological evaluation. *Id.*, Exh. 18 at 11.

Mr. Dudgeon argues, however, that he raised this claim in his original personal restraint petition when he alleged that the pre-sentence investigation report, used as the impetus by the End Sentence Review Committee, was "rife with false information and calculated distortions," that Ms. Acker was the chairperson for the Committee at that time, the SORL was based on the erroneous information in the pre-sentence investigation report, and that Ms. Acker was directly responsible for the creation of the SORL. Dkt. 19, p. 10.

A review of the record confirms that the factual basis of Mr. Dudgeon's claim that challenges Ms. Acker's scoring of the Risk Classification based on "false and greatly distorted information," was not previously presented by Mr. Dudgeon to the Washington Court of Appeals or the Washington Supreme Court. Dkts. 10, 14 and 18. Each claim must be presented to the state's highest court based on the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court. *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982), *cert. denied,* 461 U.S. 916 (1983). A state prisoner must present the state court with the same claim he urges upon the federal courts. *See Picard v. Connor*, 404 U.S. 270, 276 (1971). Mr. Dudgeon did not present the factual basis of his third claim regarding Ms. Acker's scoring of

his risk classification to either the Washington Court of Appeals or the Washington Supreme Court.  Therefore, this claim is unexhausted and should be dismissed.

### 2. Fourth Claim – Due Process Violation Based on DOC Employees Delay in Taking Action on Transfer to Community Custody

In his fourth claim for federal habeas relief, Mr. Dudgeon argues that he was unlawfully imprisoned beyond his earned early release date due to the intentional and grossly negligent acts of DOC personnel and therefore, the state is required to prove a new, recent overt act.  Dkt. 3, pp. 21-22.

Mr. Dudgeon raised this claim in his brief to the Washington Court of Appeals, but only as a general claim of "due process," and it was not fully and fairly represented as a federal constitutional violation by citing the Federal Constitution or federal case law.  Dkt. 12, Exh. 10, pp. 23-26.  In his motion for discretionary review, Mr. Douglas raised this claim again, but only as a general claim of "due process."  *Id.*, Exh. 14, pp. 2-13.  Mr. Dudgeon cited to only one federal case for the general proposition that "Washington has created a liberty interest in early release into community custody that is protected by the Due Process Clause of the Fourteenth Amendment."  Dkt. 12, Exh. 14, p. 3 (citing *Carver v. Lehman,* 528 F.3d 659, 665 (9th Cir. 2008)).  However, he relied entirely on Washington state law, including state statutes, the 2005 decision of Washington Court of Appeals Division One in *In re Personal Restraint of Liptrap,* 127 Wn. App. 463, 111 P.3d 1227 (2005) and *In re Personal Restraint of Young*, 122 Wn.2d 1, 41, 857 P.2d 989 (1993), and other Washington cases, for the proposition that the State was required to timely review his proposed release plan and had he been released as planned, the State would have had to make the additional showing of a recent overt act.  *Id.*, pp. 2-13.

In his second personal restraint petition, Mr. Dudgeon stated that "fundamental fairness is at the core of State and Federal Constitutional rights to due process and Petitioner's said rights to due process were clearly and blatantly violated by his unlawful imprisonment beyond his statutory earned early release date, E.E.R.D." Dkt. 12, Exh. 18, p. 11. Mr. Dudgeon did not appeal the Washington Court of Appeals' order dismissing this petition. *Id.*, Exh. 23.

Merely citing to the general proposition that a claim violated due process is insufficient to exhaust:

> In *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), we held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.
> . . .
>
> We have also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that it violated due process for a jury instruction to obviate the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.*, at 7, 103 S.Ct., at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The only manner in which the habeas petitioner had cited federal authority was by referring to a state-court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." 459 U.S., at 7, 103 S.Ct., at 278 (internal quotation marks omitted). Our review of the record satisfied us that the *Sandstrom* claim "was never presented to, or considered by, the [state] courts," but we found it especially significant that the "broad federal due process right" that the habeas petition might have been read to incorporate did not include "the more particular analysis developed in cases such as *Sandstrom*." 459 U.S., at 7, 103 S.Ct., at 278.

*Gray v. Netherland*, 518 U.S. at 162-63 (emphasis added).

State courts are not required to comb the record in order to discover the federal nature of the prisoner's claim; the federal claim must be contained within the four corners of the prisoner's state court brief or petition. *Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004). Additionally, both

REPORT AND RECOMMENDATION - 17

federal and state briefing rules forbid the practice of incorporation by reference. *See* Fed. R. App. P. 28-1(b); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000); *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 949 P.2d 370, 375 n.4 (1998) (Supreme Court will not review incorporated arguments from Court of Appeals briefing).

The record reflects that Mr. Dudgeon cited to a state statute and state court decisions predicated on state law. This is not sufficient to apprise a reviewing court that he was asserting violation of his federal due process right relating to his early release into community custody.

In addition, petitioners must raise their habeas claims in both the Washington Court of Appeals and the Washington Supreme Court as federal constitutional violations. *Casey v. Moore*, 386 F.3d at 915-916; *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Because Mr. Dudgeon failed to do so, his fourth claim is unexhausted and should be dismissed.

### 3. Sixth Claim – Expert Testimony Unsupported by Scientific Data

In his sixth claim for habeas relief, Mr. Dudgeon argues that his commitment order should be vacated because the trial court permitted the state's expert to testify based solely on her opinion, which was unsupported by any scientific data. Dkt. 3, p. 3.

Mr. Dudgeon raised his sixth claim as a federal constitutional violation in his habeas petition filed in the Washington Supreme Court. Exh. 18, pp. 2, 5, and 33 (citing to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 143 (1999) as precluding a conclusion based on an opinion unsupported by scientific data.). However, when he presented this claim to the Washington Court of Appeals (Dkt. 12, Exh. 10), and in his motion for discretionary review in the Washington Supreme Court (*Id.*, Exh. 14), he did not present the claim as a federal constitutional

violation.  There, Mr. Dudgeon argued that the testimony was improper based on Washington state law.[4]

Because this claim was not presented to the Washington Court of Appeals, the claim is unexhausted and should be dismissed.  See *O'Sullivan,* 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

**B.      Cause and Prejudice or Fundamental Miscarriage of Justice**

As noted above, Mr. Dudgeon's third, fourth and sixth habeas claims are unexhausted. Thus, his petition for writ of habeas corpus cannot be granted as to those claims.  In addition, because Mr. Dudgeon previously filed a personal restraint petition in the state courts of Washington, he will be barred from returning to State Court to file a second petition to properly exhaust those claims.  RCW 10.73.140; Dkt. 12, Exhs. 18 and 22.  Absent a showing of cause and prejudice or a fundamental miscarriage of justice, Mr. Dudgeon's unexhausted third, fourth and sixth habeas claims are not cognizable in federal court.

Unless it would result in a "fundamental miscarriage of justice", a petitioner who procedurally defaults may receive federal review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman*, 111 S. Ct. at 2565.  To show "cause", the petitioner must show that some objective factor, external to the petitioner, prevented compliance with the state's procedural rule. *Id*. at

---

[4] The court notes that in his brief before the Washington Court of Appeals and habeas petition before the Washington Supreme Court, Mr. Dudgeon argued that his Fifth and Fourteenth Amendment due process rights were violated when the state failed to prove the elements necessary for commitment beyond a reasonable doubt (which included the court's reliance on the expert's opinion).  However, this latter mention is not considered a fair presentation of his claim that the trial court allowed the state's expert to testify in the first instance in the absence of scientific evidence.  To have fairly presented his sixth claim as a federal constitutional one, Mr. Dudgeon must have referred to a specific federal constitutional guarantee and included a statement of the facts entitling him to relief." *Gray v. v. J.D. Netherland,* 518 U.S. 152, 162-63 (1996).

2566; *Alderman v. Zant*, 22 F.3d 1541, 1551 (11th Cir. 1994). The factor must not only have been external and objective, but it must have actually caused the petitioner's failure to properly exhaust a claim in compliance with state procedural rules. *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995). "The fact that [a petitioner] did not present an available claim or that he chose to pursue other claims does not establish cause." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

A petitioner can demonstrate "cause" by showing interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct. *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992). A petitioner cannot show cause for a procedural default where the petitioner bears "the costs associated with an ignorant or inadvertent procedural default" or "where the failure to raise a claim is a deliberate strategy." *Coleman*, 111 S. Ct. at 2566.

Allegations of ineffective assistance of counsel on discretionary review or in a collateral challenge do not establish "cause", because a petitioner has no constitutional right to counsel in either proceeding. *Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987); *Wainwright v. Torna*, 455 U.S. 586 (1982); *Bonin v. Calderon*, 77 F.3d 1155, 1158 (9th Cir. 1996); *Miller v. Keeney*, 882 F.2d 1428, 1432 (9th Cir. 1989). Nor do a petitioner's own inadequacies as a pro se litigant demonstrate cause. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986); *Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991); *Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir. 1993); *Nachtigall v. Class*, 48 F.3d 1076, 1080-81 (8th Cir. 1995). Moreover, a

petitioner cannot allege as cause an issue which has not been fairly presented to the state's highest court. *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

"An evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the court determines as a matter of law that he cannot satisfy the standard." *Clark v. Lewis*, 1 F.3d 814, 820 (9th Cir. 1993) (citing *Campbell v. Blodgett*, 997 F.2d at 524).

To demonstrate a fundamental miscarriage of justice, the petitioner must make a colorable showing of actual innocence. *Murray v. Carrier*, 477 U.S. at 495-96; *Sawyer v. Whitley*, 112 S. Ct. 2514, 2518 (1992); *Schlup v. Delo*, 115 S. Ct. 851, 870 (1995). A claim of legal innocence is not sufficient to meet the miscarriage of justice exception. *Schlup v. Delo*, 115 S. Ct. at 867. The miscarriage of justice exception allows review of a defaulted claim only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. . . ." *Murray v. Carrier*, 477 U.S. at 496 (emphasis added). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 115 S. Ct. at 867. "The exception is available only where the petitioner "supplements his constitutional claim with a colorable showing of factual innocence." *Coley v. Gonzales*, 55 F.3d 1385 (9th Cir. 1995) (quoting *Herrara v. Collins*, 113 S. Ct. 853, 862 (1993) (emphasis in original)); *Bannister v. Delo*, 100 F.3d 610 (8th Cir. 1996) (putting a different spin on evidence that was presented to the jury is not new evidence of innocence).

Mr. Dudgeon has made no showing that some objective factor external to his defense prevented him from complying with the procedural rules of the Washington courts. Because Mr. Dudgeon "cannot establish any reason, external to him, to excuse his procedural default," this Court need not address the issue of actual prejudice." *Boyd*, 147 F.3d at 1127; *Thomas v. Lewis*,

REPORT AND RECOMMENDATION - 21

945 F.2d 1119, 1123 n.10 (9th Cir. 1991).  Furthermore, because Mr. Dudgeon does not present new evidence of actual innocence, this is not the kind of extraordinary instance where the petition should be granted despite the absence of a showing of cause.  *McCleskey*, 499 U.S. at 494; *MurDudgeon*, 477 U.S. at 495-96.  See also, *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995) ("The exception is available only where the petitioner 'supplements his constitutional claim with a colorable showing of factual innocence.'")  Mr. Dudgeon's claim of actual innocence is analyzed more fully in paragraph C below.

Accordingly, the undersigned recommends that Mr. Dudgeon's third, fourth and sixth habeas claims should be dismissed with prejudice because they are unexhausted and procedurally barred.

**C.      Time Bar under 28 U.S.C. § 2244(d)**

Respondent argues that Mr. Dudgeon's first and second habeas claims are time-barred under 28 U.S.C. § 2244(d).  The undersigned's review of the record confirms that these habeas claims are time-barred.

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d).   A petition for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a State court is untimely when it is filed more than one year after the underlying judgment becomes final.  *Id.*  In general, a judgment becomes final on the date that direct review of the conviction is concluded.  28 U.S.C. § 2254(d)(1); *Wixom v. Washington*, 264 F.3d 894, 896 (9th Cir. 2001).  A court must resolve statute of limitations issues before resolving the merits of individual claims.  The statute of limitations is subject to equitable tolling, but such tolling "will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

control make it impossible to file a petition on time." *Id*. at 1288 (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996)).

Where the challenged conviction became final after April 24, 1996, the statute generally begins to run from one of the following four dates:

> (A)  the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such state action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1).

Direct review ordinarily concludes either upon the expiration of the time for filing a petition for writ of certiorari, or when the Supreme Court rules on a petition for writ of certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  A petitioner seeking review of a judgment of a lower state court must file the petition for writ of certiorari "within 90 days after entry of the order denying discretionary review."  Sup. Ct. Rule 13(1).   "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

REPORT AND RECOMMENDATION - 23

The statute of limitations tolls only during the time a properly filed post-conviction, collateral challenge is pending in state court. 28 U.S.C. § 2244(d)(2); *Nino v. Galaza*, 183 F.3d 1003 (9th Cir. 1999). A state court petition rejected as untimely is not 'properly filed,' and is not entitled to statutory tolling under section 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S. Ct. 1807, 1814 (2005).

Mr. Dudgeon's first and second claims are challenges to his conviction for indecent liberties by forcible compulsion, for which he was sentenced on October 22, 2001 to 68 months confinement. Dkt. 12, Exh. 1. Mr. Dudgeon's state court judgment became final on February 10, 2003, or 30 days after the Washington Court of Appeals issued its January 10, 2003 opinion in his case. *Id.*, Exh. 7; RAP 5.2(a). Mr. Dudgeon did not appeal the Washington Court of Appeals' decision affirming his conviction. The mandate was issued by the Washington Court of Appeals on March 5, 2003. Dkt. 12, Exh. 8. Mr. Dudgeon did not file any personal restraint petitions pertaining to his Superior Court judgment and sentence, but only as to his civil commitment as a sexually violent predator. See *Id.*, Exh. 18. Therefore, he is not entitled to the application of statutory tolling based on the filing of such a petition. See 28 U.S.C. 2244(d)(2); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999); Dkt. 12, Exh. 1. Instead, his lone personal restraint petition challenged, in different respects, the civil commitment order issued by the Kitsap County Superior Court. Dkt. 12, Exh. 18. The federal statute of limitations began to run on March 30, 2003, and continued to run in an uninterrupted fashion until he filed his federal habeas petition in this Court on May 11, 2009. Dkt. 3, p. 40.

On January 22, 2008, Mr. Dudgeon filed a personal restraint petition in the Washington Supreme Court, raising several issues, including his claim that the deliberate suppression and/or omission of critical evidence of his innocence in his predicate conviction constituted a breach of

REPORT AND RECOMMENDATION - 24

his Constitutional right to a fair and impartial trial. *Id.*, Exh. 18, at i. In this petition, Mr. Dudgeon argued that the suppression of critical exculpatory evidence in the form of conflicting statements made by the victim immediately following and after the incident resulted in a flawed conviction allowing him to now challenge his subsequent civil commitment. Dkt. 12, Exh. 18, p. 23 (citing *Brock v.* Weston, 31 F.3d 887 (1994)).

After the State filed a response, and Mr. Dudgeon filed his reply, the Washington Supreme Court Commissioner transferred Mr. Dudgeon's personal restraint petition to the Washington Court of Appeals, Division II. *Id.*, Exh. 21. On September 25, 2008, the Acting Chief Judge of the Washington Court of Appeals issued an order dismissing Mr. Dudgeon's personal restraint petition. *Id.*, Exh. 22. Mr. Dudgeon did not file an appeal of the Washington Court of Appeals' order dismissing his petition to the Washington Supreme Court, as the Washington Court of Appeals issued a certificate of finality on November 21, 2008. *Id.*, Exh. 23

Consequently, his first two grounds for relief, both of which challenge his conviction for indecent liberties by forcible compulsion, are clearly time-barred, years beyond the one-year federal statute of limitations period in 28 U.S.C. § 2244(d).

Mr. Dudgeon contends, however, that these claims are not time barred because as a *pro se* litigant he does not have access to a constitutionally adequate source of legal research material, he was unaware until advised by others at SCC that he could challenge his predicate conviction under *Brock v. Weston,* 31 F.3d 887 (1994), and by the time he learned that a challenge was possible, his appellate attorney had already filed her direct appeal to the Washington Court of Appeals. Dkt. 19, pp. 3-4. He also argues that he was not required to file an appeal to the Washington Supreme Court because the claim was before the Court before it transferred his case to the Washington Court of Appeals. Dkt. 19, p. 6.

REPORT AND RECOMMENDATION - 25

The Ninth Circuit Court of Appeals has determined equitable tolling of the filing deadline for a federal habeas petition is available only if extraordinary circumstances beyond the petitioner's control made it impossible to file a petition on time. See *Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir.2003), modified on other grounds by 447 F.3d 1165 (9th Cir.2006); *Malcom v. Payne*, 281 F.3d 951, 962 (9th Cir.2002). Equitable tolling is only appropriate when external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim. See *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir .1999). It is Petitioner's burden to establish that equitable tolling is warranted in his case. *Gaston*, 417 F.3d at 1034.

Equitable tolling is to be rarely granted. See *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir.2006); *Stead v. Head*, 219 F .2d 1298, 1300 (11th Cir.2000) (stating the remedy is "typically applied sparingly"). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *United States v. Patterson*, 211 F.3d 927, 930-31 (5th Cir.2000) (internal quotations and citations omitted). Compare *Corjasso v. Ayers*, 278 F.3d 874, 877-78 (9th Cir.2002). The Eleventh Circuit Court of Appeals has stated that equitable tolling is available only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.1999) (emphasis added). The petitioner must establish a causal connection between the alleged roadblock to their timely filing of their federal habeas petition and the actual failure to file the petition on time. See *Gaston*, 417 F.3d at 1034 (requiring a "causal connection" between the alleged extraordinary circumstances and the failure to file a timely petition); *Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir .2005); *Bilbrey v. Douglas*, 124 Fed.App. 971, 973 (6th Cir.2005).

REPORT AND RECOMMENDATION - 26

There are no grounds for equitable tolling in this case. There is no evidence of conduct by the Respondent that impeded Mr. Dudgeon's ability to prepare and file his federal petition in a prompt fashion. There is no evidence of circumstances, such as a lack of clarity in the law or legal unavailability of claims preventing Mr. Dudgeon from filing his habeas petition in a prompt fashion. Mr. Dudgeon contends that he filed this petition after having just learned of the *Brock* case which empowered him to challenge his predicate conviction. Dkt. 19, p. 4. Mr. Dudgeon argues, therefore, that he did not learn he had an actionable cause regarding his predicate offense until he learned of the *Brock* case and therefore, the discovery rule should be applied to the one year statute of limitations.

Here, Mr. Dudgeon asserts that he did not file his petition in a timely manner because he was "unaware" of a 1994 case allowing him to do so. Mr. Dudgeon has not met his burden of establishing that there were extraordinary circumstances beyond his control which made it impossible for him to file a timely federal habeas petition, or that any state action was the "but for" cause for his failure to timely file his federal habeas action. See *Brown v. Barrow*, F.3d, 2008 WL 108706, *1 (11th Cir.2008) (holding the petitioner has a strong burden to plead specific facts supporting their claim of extraordinary circumstances). See also *Pace v. DiGuglielmo*, 544 U.S. 408, 418-19, 125 S.Ct. 1807, 1815 (2005) (concluding that the petitioner was not entitled to equitable tolling because he was not misled or confused about the exhaustion of his state remedies and filing his federal habeas petition); *Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir.2005) ("Each of the cases in which equitable tolling has been applied have involved wrongful conduct, either by state officials or, occasionally, by the petitioner's counsel."). Compare *Sanchez v. Cambra*, 137 Fed.App. 989, 990 (9th Cir.2005), cert. denied, 126 S.Ct. 1333 (2006); *Faught v. Butler*, 135 Fed.App. 92, 93 (9th Cir.2005).

REPORT AND RECOMMENDATION - 27

Mr. Dudgeon does not allege that he was actively misled about the statute of limitations or his ability to file a petition relating to his predicate convictions. He alleges only that he did not learn that he had an actionable cause regarding his predicate convictions until after his direct appeal had been filed by his attorney. However, a petitioner's pro se status, ignorance of the law, and lack of representation during the applicable habeas filing period do not constitute extraordinary circumstances justifying equitable tolling because such circumstances are not "extraordinary." See, e.g., *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir.2006); *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir.2004); *Fisher v. Johnson*, 174 F.3d 710, 714-716 (5th Cir.1999).

Additionally, Mr. Dudgeon is not entitled to equitable tolling based on a claim of "actual innocence." He states that the state's primary witness gave four widely divergent versions of events surrounding the alleged predicate offense of December 20, 1997. Dkt. 19, p. 7. He argues that by allowing this to go uncorrected, the prosecution suppressed evidence and knowingly used perjured testimony. *Id.*, p. 7.

To allow a court to proceed to determine the merits of a petitioner's claim of actual innocence, a petitioner must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865 (1995) (emphasis added).  See also *Cummings v. Sirmons*, 506 F.3d 1211, 1223-24 (10th Cir.2007). The actual innocence exception should "remain rare" and "only be applied in the extraordinary case."  *Schlup*, 513 U.S. at 321, 115 S.Ct. at 864, quoted in *Cooper v. Brown*, 510 F.3d 870, 923 (9th Cir.2007).

This is not the "extraordinary case" in which the Court should consider the merits of Petitioner's habeas claims notwithstanding his failure to timely file his habeas action.  Petitioner does not provide any newly-presented reliable evidence to support his claim of actual innocence.  Rather, he simply argues that the evidence against him was false and that conflicting evidence was not properly presented.  For example, Mr. Dudgeon states that the victim made two statements that "no struggle was involved," that both of these statements "were in his possession at one time," and that his attorney had the statements in her possession "as part of the case discovery," but failed to introduce them at trial.  Dkt.  3, pp. 5 and 9.  Thus, there is nothing to indicate that this is "new evidence" that was not available at Mr. Dudgeon's trial.

Here, Mr. Dudgeon has not met the *Schlup* burden to allow a court to proceed to determine the merits of his claim of actual innocence.  In addition, Mr. Dudgeon has not met his burden of establishing that there were extraordinary circumstances beyond his control which made it impossible for him to file a timely federal habeas petition, or that any state action was the "but for" cause for his failure to timely file his federal habeas action.  Therefore, this Court should dismiss his first and second grounds for relief with prejudice as time-barred under 28 U.S.C. § 2244(d).

**D. Fifth Ground for Relief – Civil Commitment Criteria – On the Merits**

In his fifth ground for relief, Mr. Dudgeon contends that the civil commitment order in his case should be vacated if it can be shown that the trial court permitted the commitment trial to proceed even though Mr. Dudgeon did not meet the commitment criteria. Dkt. 3, pp. 24-36.

The Washington Court of Appeals rejected Mr. Dudgeon's fifth claim for relief as follows:

> A SVP is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16). To find that an individual is a SVP, each of the following elements must be proved beyond a reasonable doubt: (1) that the individual has been convicted of or charged with a crime of sexual violence, (2) that the individual suffers from a mental abnormality or personality disorder, and (3) that such mental abnormality or personality disorder makes the individual likely to engage in predatory acts of sexual violence if not confined in a secure facility. RCW 71.09.020(16); *In re Det. of Thorell,* 149 Wn.2d 724, 742, 72 P.3d 708 (2003). Proof is sufficient if, when viewed in the light most favorable to the State, a rational trier of fact could have found those elements beyond a reasonable doubt. *Thorell,* 149 Wn.2d at 744-45.
>
> Dudgeon does not dispute the first element, namely that he has been convicted of a sexually violent crime. Further, he does not dispute the second element, namely that he has a mental abnormality or personality disorder. Instead, Dudgeon argues, several different ways, that the State failed to present sufficient evidence for the jury to find that his mental abnormality, pedophilia, made him likely to engage in predatory acts of sexual violence if not confined to a secure facility; i.e. that he is currently dangerous.
>
> B. Mental Illness Makes Dudgeon Likely to Reoffend
>
> Dudgeon argues that the State did not meet its burden on the third element because they did not prove that his pedophilia makes him currently dangerous of committing predatory acts of sexual violence. Dudgeon argues that though he has been incarcerated since 2001; prior to that, there was no evidence presented of sexual contact with a prepubescent girl for 14 years. During those 14 years, Dudgeon lived in the community not subject to any court-ordered supervision. Dudgeon argues that because his most recent sexual contact with a prepubescent girl was 21 years before the SVP commitment proceeding, the State failed to show that his pedophilia made him likely to reoffend.[fn 1]

REPORT AND RECOMMENDATION - 30

[fn 1]  Dudgeon does not dispute that he offended with women over the age of 14 during this period. [Footnote by the court.]

Prior courts have noted that:

[A] diagnosis of a mental abnormality or personality disorder is not, in itself, sufficient evidence for a jury to find a serious lack of control. Such a diagnosis, however, when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirements of an SVP.

*Thorell,* 149 Wn.2d at 761-62. Here, in addition to Dr. Phenix, the State produced testimony from six of Dudgeon's alleged victims, whom, if we take the evidence in the light most favorable to the State, he raped and molested on hundreds of occasions from the early 1970s through the late 1990s. Additionally, the jury heard from Dudgeon who explained his interactions with these women.

Dr. Phenix testified that despite Dudgeon's age and the passage of time, he was likely to reoffend if released to the community.  She based this opinion on her interview of Dudgeon, extensive records, actuarial tools, empirically validated risk factors, and information about Dudgeon's physical abilities. Dr. Phenix also informed the jury that Dudgeon told her in the interview that he does not believe he needs sex offender treatment because he believes he has no problem requiring treatment.

Dr. Phenix explained to the jury that Dudgeon's sexual exploitation of women older than 13 to 14 did not change her pedophilia diagnosis. She explained that she observed Dudgeon as being sexually aroused by women during pubescence, through their teenaged years, "a time when the girl is still pretty emotionally under-developed." 9 RP at 489.  She went on to note that Dudgeon appeared to be "detached from the emotional experience of children, [that Dudgeon] doesn't have a normal understanding of what children experience when they're harmed by someone."  9 RP at 491.  Dr. Phenix underscored this "lack of emotional connection to his victims that causes him serious difficulty in controlling his behavior." 9 RP at 491.

Dr. Phenix continued to note Dudgeon's difficulty controlling his behavior, citing his professional and personal difficulties stating:

... [Dudgeon's] a person who has exhibited significant problems with his behavioral controls.  He is a very -- was very accomplished in his profession.  He had an esteemed career as a

decorated colonel. He was engaging in inappropriate sexual behavior and warned about it by the parents, and that didn't stop him from continuing to do that, at the threat of losing this wonderful career that he had and all that he had accomplished, had a family, the threat of losing that. He was convicted of a sex offense, and that did not stop him from continuing to engage in illegal sexual behavior after that time.

And furthermore, I look at the way in which he engaged in that behavior. That was particularly risky. Most people wouldn't take those kinds of risks in trying to meet their sexual needs. That demonstrated to me serious difficulty with his behavioral controls. He's engaging in sexual activity with [MS], when - - and other children -- when there is another child in the bed. Engaged in sexual activity with [DL], when his own daughter was in the bed and could be found out very easily.

9 RP at 491-92.

Dr. Phenix concluded that Dudgeon is "predisposed to the commission of criminal sexual acts with children and with teen-agers that constitutes him a menace to the health and safety of others." 9 RP at 493. After hearing from Dr. Phenix, Dudgeon, and the six alleged victims who described their interactions with Dudgeon in detail, the jury had more than enough evidence from which to determine, beyond a reasonable doubt, that Dudgeon's pedophilia made him likely to engage in predatory acts of sexual violence if not confined to a secure facility; i.e. that Dudgeon is currently dangerous.

C. Evidence of "Predatory Behavior"

Dudgeon argues that the State failed to show that he would offend in a "predatory" manner, as defined in RCW 71.09.020(9). The statute defines predatory as "acts directed towards: (a) [s]trangers; (b) individuals with whom a relationship has been established or promoted for the primary purpose of victimization; or (c) persons of casual acquaintance with whom no substantial personal relationship exists." RCW 71.09.020(9). Dudgeon argues that there was no evidence presented of sexual violence toward strangers and no evidence that he established or promoted relationships with victims for the purpose of victimization. There is however, abundant evidence that Dudgeon committed acts in the third listed category: he was casually acquainted with victims where no substantial relationship existed. His own argument in his brief supports this point: "The evidence showed that [Dudgeon] was acquainted with [DL] because she was his daughter's friend, . . . [PO] came to [Dudgeon's] house at [KM]'s invitation, [Dudgeon] was romantically involved with [MS]'s mother, and [SL] was [MS]'s friend." Appellant's Br. at 36. In several of these circumstances, as Dudgeon

argues, he victimized "persons of casual acquaintance with whom no substantial personal relationship [existed.]" RCW 71.09.020(9). Viewed in the light most favorable to the State, the jury heard sufficient evidence to determine beyond a reasonable doubt that Dudgeon would reoffend in a predatory manner.

Dkt. 12, Exh. 13, pp. 13-17.

In order to obtain federal habeas relief, Mr. Dudgeon must show that the Washington Court of Appeals' decision regarding his fifth claim was contrary to or an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court. See 28 U.S.C. § 2254; see also *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Mr. Dudgeon argues that the trial court erred in allowing his commitment trial to proceed when he was brought before the court based on "criteria created by state actors who offered false and misleading information." Mr. Dudgeon argues generally that this information was not verified "as required by federal statute, i.e. Title 5 U.S. C. §§ 552(a) *et seq.* and § 702." Dkt. 19, p. 20. The statutes referred to by Mr. Dudgeon govern generally the administrative procedures applicable to agencies, including public disclosure, promulgation of regulations, production of agency records and judicial review of agency action. Mr. Dudgeon does not cite to any U.S. Supreme Court case demonstrating that the Washington Court of Appeals' decision regarding his fifth claim was contrary to or an unreasonable application of that case law. See Dkt. 3, pp. 24-36.

The decision by the Washington Court of Appeals regarding Mr. Dudgeon's fifth claim for relief was not contrary to or unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court. Therefore, Mr. Dudgeon's fifth claim is without merit and should be dismissed.

REPORT AND RECOMMENDATION - 33

## VII.  SUMMARY CONCLUSION

Mr. Dudgeon's first and second habeas claims challenging his sexually violent predator conviction are time-barred under 28 U.S.C. § 2244(d) and should be dismissed with prejudice. Mr. Dudgeon failed to properly exhaust his third, fourth and sixth claims and, as he has previously filed a personal restraint petition, he is now procedurally barred from presenting those claims.  In addition, Mr. Dudgeon has made no showing of cause and prejudice or actual innocence.  Finally, Mr. Dudgeon's fifth claim for relief is without merit as the Washington Court of Appeals' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.  Therefore, the undersigned recommends that Mr. Dudgeon's petition be denied and dismissed with prejudice.

## VIII.  CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Based on a thorough review of the record and analysis of the law in this case, the undersigned concludes that Mr. Dudgeon is not entitled to a COA with respect to any of the claims asserted in his petition because he has not demonstrated that jurists of reason could

REPORT AND RECOMMENDATION - 34

disagree with the district court's resolution of his constitutional claims or could conclude the issues presented are adequate to deserve encouragement to proceed further.

### IX.  WRITTEN OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 22, 2010**, as noted in the caption.


DATED this  31st  day of December, 2009.


Karen L. Strombom
United States Magistrate Judge